UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 18-CV-23276/GOODMAN
[CONSENT CASE]

U.S. SPECIALTY
INSURANCE COMPANY,

    Plaintiff,

vs.

ATLANTIC BIOLOGICALS
CORPORATION,

    Defendant.
_____/

## **DEFENDANT'S *DAUBERT* CHAELLENGE TO PLAINTIFF'S EXPERT**

The Defendant, ATLANTIC BIOLOGICALS CORPORATION, by and through undersigned counsel and pursuant to Rule 37 of the Federal Rules of Civil Procedure, hereby respectfully submits this *Daubert* Motion to challenge the admissibility of experts' opinions that Plaintiff intends to present at trial, and as grounds therefor, states as follows:

Plaintiff intends to solicit expert opinion testimony at trial from two expert witnesses: (1) Burl Daniel and (2) Dr. Michael Liebschner. Copies of their reports are attached hereto as Exhibits 1 and 2, respectively. Defendant challenges the admissibility of both experts' opinions due to their failure to satisfy the criteria for admissibility under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1993).

## **MEMORANDUM OF LAW**

**I.**     **THE *DAUBERT* STANDARD FOR ADMISSIBILITY OF EXPERT OPINION TESTIMONY**

Under Federal Rule of Evidence 702, district courts are to perform a critical gatekeeping function to exclude unreliable expert testimony. Fed. R. Evid. 702, Committee Notes 2000 Amendment. The *Daubert* standards of "relevance and reliability for scientific evidence must nevertheless be met" in a bench trial. *United States v. Brown*, 279 F. Supp. 2d 1238, 1239 (S.D. Ala. 2003) ("Federal district courts are still required to rely only on admissible and reliable expert testimony, even while conducting a bench trial."); *see also Gess v. United States*, 952 F. Supp. 1529, 1532 (M.D. Ala. 1996)( "In bench trials, the judge serves as the sole fact-finder and, thus, assumes the role of the jury."). The United States Court of Appeals for the Eleventh Circuit has noted that "[i]n considering the proffered expert testimony, a trial judge is [to be] mindful the burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Chapman v. P&G Distrib., LLC*, 766 F.3d 1296, 1300 (11th Cir. 2014). Therefore, the district court in considering whether to exclude any expert or expert opinion, must consider whether:

> (1) [T]he expert is qualified to testify competently regarding the matters [they] intend[] to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Fed. R. Evid. 702; *Knight v. Miami-Dade Cty.,* 856 F.3d 795, 808 (11th Cir. 2017). In the Eleventh Circuit, these requirements are known as the "qualification," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Additionally, the party offering the expert must meet its burden by "satisfying each of these three elements by a preponderance of the evidence." *Finestone v. Fla. Power & Light Co.,* 272 F. App'x 761, 763 (11th Cir. 2008).

  **a. An Expert must be qualified to render an opinion on the specific subject at issue.**

First, "the expert must be qualified to testify competently regarding the matter [they] intend[] to address." *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1324 (11th Cir. 2014). Therefore, to warrant admissibility, the expert's testimony must be derived from scientific technical, or other specialized knowledge on the specific subject matter at issue. Fed. R. Evid. 702. Accordingly, "the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert* 113 S. Ct. at 2795.

### b. The opinions must be Scientifically valid and Reliable.

District courts must ensure "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Rutledge v. NCL (Bahamas), Ltd.*, 464 F. App'x 825, 826 (11th Cir. 2012). When considering an expert's reliability, the inquiry "must be solely on [the expert's] principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Accordingly, the district court must "undertake an independent analysis of each step in the logic leading to the expert's conclusions; if the analysis is deemed unreliable at any step, the expert's entire opinion must be excluded." *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291, 1361 (N.D. Fla. 2018) (citing *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009). When considering an expert's reliability, the court should consider the following factors:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*United States v. Barton*, 909 F.3d 1323, 1332 (11th Cir. 2018) (citing *Quiet Tech. DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). Expert testimony must be excluded if the reasoning or methodology underlying the opinion is scientifically invalid, or if the methodology cannot properly be applied to the facts. *Daubert v. Merrell Dow Pharms., Inc.*, 509

U.S. 579, 592 (1993). Failure to satisfy these criteria demonstrates the theories are speculative and highly unreliable. *Kallas v. Carnival Corp.*, 2009 WL 901507, *6 (S.D. Fla. 2009). Moreover, neither the Federal Rules of Evidence nor *Daubert* require a district court to admit an expert's opinion "which is connected to existing data only by the expert's ipse dixit." *Bouton v. Ocean Props.*, No. 16-cv-80502-BLOOM/Valle, 2017 U.S. Dist. LEXIS 174989, at *1 (S.D. Fla. Oct. 23, 2017). *See also McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) ("[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions....").

    c. **The opinions must be helpful to the Court.**

Under Rule 702, the purpose of an expert's testimony is to "assist[] the trier of fact through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Holderbaum v. Carnival Corp.*, No. 13-24216-CIV, 2015 U.S. Dist. LEXIS 111790, at *16 (S.D. Fla. Aug. 23, 2015); *see also United States v. Frazier,* 387 F.3d 1244, 1262-63 (11th Cir. 2004) (Expert testimony is not helpful " when it offers nothing more than what lawyers for the parties can argue in closing arguments."). Meaning that courts must ensure "that [an] expert witness[] will not testify about lay matters which [the Court] is capable of understanding and deciding without the expert's help." *Nat'l Union Fire Ins. Co. v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371-BLOOM/Valle, 2015 U.S. Dist. LEXIS 193807, at *32 (S.D. Fla. July 2, 2015) (quoting *Hendrix v. Evenflo Co.,* 255 F.R.D. 568, 579 (N.D. Fla. 2009)). Accordingly, it is not helpful for the expert to just tell the Court how to decide the case. *See Clena Invs., Inc. v. XL Specialty Ins. Co*., 280 F.R.D. 653, 656 (S.D. Fla. 2012) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments*."); see also Commodores*

*Entm't Corp. v. McClary*, 879 F.3d 1114, 1121 (11th Cir. 2018) (An "expert[] may not testify to the legal implications of conduct or tell the [trier of fact] what result to reach.").

## II. BURL DANIEL'S TESTIMONY IS INADMISSBLE LEGAL CONCLUSIONS AND NOT HELPFUL TO THE COURT

"Expert opinions are **inadmissible to the extent that they contain legal conclusions regarding** the expert's interpretation of contracts, **insurance policies**, or other legal documents." *Hibbett Patient Care, LLC v. Pharmacists Mut. Ins.* Co., No. 16-0231-WS-C, 2017 U.S. Dist. LEXIS 72786, at *5 (S.D. Ala. May 12, 2017) (emphasis added). Accordingly, an expert witness "may not testify to the legal implications of conduct" or tell the Court what result to reach. *Quevedo v. Iberia Lineas Aereas de Espana S.A. Operadora Unipersonal*, No. 17-21168-CV, 2018 U.S. Dist. LEXIS 174771, at *17 (S.D. Fla. Oct. 11, 2018) (quoting *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Meaning that an "[e]xpert witness['s] testimony that suggests the ultimate result … is not helpful." *Bouton*, 2017 U.S. Dist. LEXIS 174989, at *40-41 ("[A] witness also may not testify to the legal implications of conduct.") (internal citation omitted). The Eleventh circuit has stressed that "**merely telling … result to reach is unhelpful and inappropriate**." *Umana-Fowler v. NCL (Bah.) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990))(emphasis added); *see also Jordan v. Celebrity Cruises, Inc.*, No. 1:17-20773-Civ, 2018 U.S. Dist. LEXIS 125346, at *25 (S.D. Fla. July 25, 2018) ("[T]he Eleventh Circuit has repeatedly held that legal conclusions or **statements instructing what conclusion [to] reach are impermissible under *Daubert*.**")(emphasis added). "Courts must remain vigilant against the admission of legal conclusions." *Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2019 U.S. Dist. LEXIS 45668, at *35 (N.D. Ga. Feb. 25, 2019) (quoting *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977)). Simply, "an expert witness may not testify as to his opinion

regarding ultimate legal conclusions." *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009) (citing *Montgomery,* 898 F.2d at 1541 (11th Cir. 1990) ("A witness ... may not testify to the legal implications of conduct.")).  While experts may testify as to opinions regarding issues of fact, it is improper for an expert to opine on ultimate legal conclusions. *Umana-Fowler*, 49 F. Supp. 3d at 1122.

Mr. Daniel's expert report is littered with legal conclusions that are inappropriate and unhelpful to the Court.

For example, Mr. Daniel's first "opinion" is that Defendant violated its duty of utmost good faith to Plaintiff.  This is the very legal conclusion that Plaintiff seeks the Court to determine in Count III of their complaint, where they allege violation of the legal doctrine of *uberrimae fidei*.  See ECF 46, ¶¶90-102.  An expert witness "may not testify to the legal implications of conduct" or tell the Court what result to reach. *Quevedo v. Iberia Lineas Aereas de Espana S.A. Operadora Unipersonal*, No. 17-21168-CV, 2018 U.S. Dist. LEXIS 174771, at *17 (S.D. Fla. Oct. 11, 2018) (quoting *Montgomery v. Aetna Cas. & Sur. Co*., 898 F.2d 1537, 1541 (11th Cir. 1990).

Mr. Daniel has never been licensed to practice law in any jurisdiction, and he has never been a licensed insurance agent in New York or Florida.[1]  However, Mr. Daniel asserts that the doctrine of utmost good faith (*uberrimae fidei*) is applicable to all insurance policies:

> Q. Is it your insurance-expert opinion that the doctrine of uberrimae fidei applies in all insurance policies?
>
> A. It may not be referred to as uberrimae fidei. I mean, I think I find that, in my experience,  specific to marine. But, yeah, you got to disclose -- you can't have two car wrecks in Oklahoma and you get a new Texas driver's license, move down here, and  expect the cheapest auto insurance. You've got to disclose that. It's material underwriting data as to the nature of the risk.

---

[1] The subject insurance policy contains a choice of law provision calling for the application of New York law in the absence of governing general maritime law.  The policy was issued in Florida.

>   Q. Okay. Let's exclude the term "uberrimae fidei." Does the duty to deal with each other in utmost good faith apply in all insurance policy transactions that you're aware of, as an insurance expert?
>
>   A. Yes. Both ways.

Deposition of Burl Daniel, 148:5 – 21.

Moreover, it is Mr. Daniel's opinion that the legal doctrine of *uberrimae fidei* applies in all insurance policy regardless of jurisdiction. However, while the doctrine of *uberrimae fidei* applies to some marine insurance contracts, it does not apply where the parties have contracted out of it. See *King v. Allstate Ins. Co.*, 906 F.2d 1537, 1542 (11th Cir. 1990) (construing a marine insurance policy under the general maritime law and finding that the parties contracted for their own standard to show misrepresentation or omission to the exclusion of *uberrimae fidei*.) When the parties "contract for their own standard to show misrepresentation or omission," that language "controls the rights and obligations of the parties," and the doctrine of *uberrimae fidei* is not applicable. *Id.* at 1542-43. See also *GEICO Marine Ins. Co. v. Shackleford*, 2017 U.S. Dist. LEXIS 201896 (M.D. Fla. 2017) (finding policy language regarding omissions, concealment, and misrepresentation contracted the parties out of *uberrimae fidei*, and holding that the policy language regarding same controlled the rights and obligations of the parties)[2]. As stated in Defendant's response in opposition to Plaintiffs' motion for summary judgment, ECF 38, the parties in this case have contracted out of *uberrimae fidei*.

Additionally, Mr. Daniel opines that the description of goods insured in this case is unambiguous and does not cover the inventory lost. "Interpretation of an unambiguous insurance

---

[2] *See also Scarborough v. Travelers Ins. Co.*, 718 F.2d 702, 709 (5th Cir. 1983) (holding that the insurance policy is the "law between the parties...[and] must be enforced as written," unless its provisions are contrary to public policy or statutory law); *Compagnie Des Bauxites de Guinee v. Insurance Co. of N. Am.*, 551 F. Supp. 1239, 1242 (W.D.Pa. 1982) (noting that insurance is a matter of contract, and parties are free to agree to any reasonable conditions not contrary to public policy), *aff'd*, 721 F.2d 109 (3d Cir. 1983); *Zurich Ins. Co. v. Bouler*, 198 So.2d 129, 131 (La.Ct.App. 1967) (recognizing the "settled principle that a contract of insurance is a voluntary agreement between the parties, who may incorporate therein such provisions and conditions as they see fit").

policy **is a legal question for the court**." *Pa. Nat'l Mut. Cas. Ins. Co. v. All State Constr., Inc.*, 761 F. Supp. 2d 1306, 1306 (M.D. Ala. 2011) ("Interpretation of a contract is a question of law.") (emphasis added); *see also Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224, 1225 (11th Cir. 2005) ("Florida courts have said again and again that insurance contracts must be construed in accordance with the plain language of the policy."). "In insurance coverage cases under Florida law, courts look at an insurance policy as a whole and give every provision its full meaning and operative effect." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1228 (11th Cir. 2004). Similarly, under New York law, "the question of whether an insurance policy is ambiguous is a matter of law to be determined by the court." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 610 (2d Cir. 2001); *see also Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 100 (2d Cir. 2001) ("Unambiguous terms are to be given their plain and ordinary meaning, and ambiguous language should be construed in accordance with the reasonable expectations of the insured when he entered into the contract."). The United States District Court for the Northern District of New York has stated that:

> Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation. Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed.

*Axis Ins. Co. v. Stewart,* 198 F. Supp. 3d 4, 7 (N.D.N.Y. 2016) ("Where the parties dispute the meaning of particular insurance contract clauses, the task of the court is to determine whether such clauses are ambiguous when read in the context of the entire agreement, and where consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity."). Here, the Policy States the Goods Insured are "Consisting *principally* of: New Pharmaceutical Products *and other goods incidental to the business of the Assured*, professionally packed for export." Doc 9-1, page 2 (emphasis added).

In his deposition, Mr. Daniel claims stated that the rate charged on this type of policy was based on sales. However, Mr. Daniel had no knowledge regarding how much inventory held by all the ABC companies constituted a pharmaceutical versus a non-pharmaceutical good nor did he have any information regarding how much inventory held by all of the ABC companies constituted a medication/drug vs. medical devices versus a non-pharmaceutical good.

These statements are bare legal conclusions best left for the attorney's in closing arguments. Simply, there was no analysis done, or any science-based reasoning in reaching the conclusion that the goods lost were not goods incidental to the business of Defendants.

Such opinions do not satisfy the helpfulness prong of *Daubert*. Eleventh Circuit precedent clearly establishes that legal conclusions or statements instructing the Court what conclusion to reach are unhelpful and do not satisfy *Daubert*. *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005); see *also Ruiz v. Safeco Ins. Co.,* No. 18-21036-CV, 2019 U.S. Dist. LEXIS 78126, at *9 (S.D. Fla. May 9, 2019) ("The Eleventh Circuit requires districts courts to be wary of expert testimony that, in effect, instructs the [trier of fact] to reach a certain conclusion in a given case."); *see also Watkins v. Telsmith, Inc.,* 121 F.3d 984, 991 (5th Cir. 1997) (the district court must evaluate "whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers"). *Daubert* "requires the district judge to satisfy himself that the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997).

As Mr. Daniel's report is littered with bare legal conclusions that are unhelpful to the Court, he should be precluded from offering those opinion at trial.

    **a. Mr. Daniel's opinion that Atlantic Biologicals' failure to advise U.S. Specialty of the prior loss was willful is pure speculation.**

Mr. Daniel opines that Atlantic Biologicals' failure to advise U.S. Specialty of the prior loss was willful though he had no evidence to support his contention making it mere speculations. Mr. Daniel's conclusion was merely an assumption based on incorrect speculation. "An expert opinion based on incorrect assumptions may be subject to exclusion." *NAACP v. Fla. Dep't of Corr.*, No. 5:00-Cv-100-Oc-10GRJ, 2002 U.S. Dist. LEXIS 27838, at *1 (M.D. Fla. July 22, 2002). Bare conclusion based on pure speculation does not satisfy the Federal Rules of Evidence or *Daubert* and should be excluded. "To be admissible, an expert's testimony must be based on more than subjective belief or unsupported speculation." *McCorvey v. Baxter Healthcare Corp.*, No. 99-1250-CIV, 2010 U.S. Dist. LEXIS 103298, at *21 (S.D. Fla. Sep. 30, 2010) ("Where the court did not allow an expert to testify where their opinion was based on speculation). The Eleventh Circuit Court of Appeals, in *Montgomery,* reversed the district court for allowing an expert to state his opinion regarding the duties under an Insurance contract because the expert was merely telling the Court what result to reach. *Montgomery,* 898 F.2d at 1538.

As Mr. Daniel's opinion is based on improper assumptions and, is essentially telling the Court what to rule, he should be precluded from offering that opinion at trial.

### III. PLAINTIFF'S EXPERT MICHAEL LIEBSCHNER'S OPINION RELYING ON THE FDA IS UNSUPPORTED AND DOES NOT HELP THE COURT

Mr. Liesbschner's expert report is littered with and entirely dependent upon FDA guidelines, even though the Policy at issues made no reference to the FDA. Mr. Liebschner seeks to testify that the items listed in the loss inventory, "are classified by the United States Food and Drug Administration (FDA) as Class I (exempt) and Class II or Class III medical devices and, therefore, [t]he identified items did not include any pharmaceutical devices." Exhibit ,2 page 2,

CASE NO.: 18-CV-23276/GOODMAN
[CONSENT CASE]
Page 11

¶1. There is nothing in the Policy indicating that the Court should look at FDA Guidelines for the definition of the goods insured under this Policy.

Mr. Liesbschner's testimony regarding FDA guidelines will not assist the Court. *See Rider v. Sandoz Pharm. Cor*p., 295 F.3d 1194, 1201 (11th Cir. 2002) ("A regulatory agency such as the FDA may choose to err on the side of caution. Courts, however, are required by the *Daubert* trilogy to engage in objective review of evidence to determine whether it has sufficient scientific basis to be considered reliable."). The testimony in reliance of the FDA Guidelines will only confuse the trier of fact, especially because the policy makes no reference to the FDA Guidelines. Even more so considering that Dr. Liebschner admitted that the definition of pharmaceutical is broader than the definition of medication and/or drugs under the FDA Guidelines. Accordingly, "[w]here an expert opinion has a tendency to confuse the trier of fact, it may not satisfy the helpfulness prong." *Clena Invs., Inc. v. XL Specialty Ins*. Co., 280 F.R.D. 653, 656 (S.D. Fla. 2012).

Not only will Dr. Liebschner testimony relying on FDA definitions confuse the Court, but it is irrelevant as to issues in the case. "[T]he court must keep unreliable and irrelevant information from the [trier of fact], because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Clarke v. Schofield,* 632 F. Supp. 2d 1350, 1352 (M.D. Ga. 2009). Dr. Liebschner testimony lack's in probative value because he didn't even know if the policy at issue defined pharmaceuticals. Meaning that he neither analyzed the policy at issue, nor did he attempt to analysis any available definition in the policy to the FDA definition he solely relies on.

As such there is simply no support of Dr. Liebschner's anticipated testimony in reliance of the FDA Guidelines and he should therefor be precluded from testifying.

    a. **Dr. Liebschner opinions on the cost of reprocessing are unsupported.**

"The reliability requirement [under *Daubert*] is designed to exclude so-called junk science and ensure that the knowledge offered is more than subjective belief or unsupported speculation." *Woodley v. PFG-Lester Broadline, Inc.*, 556 F. Supp. 2d 1300, 1302 (M.D. Ala. 2008) ("[T]he focus must be solely on principles and methodology."); *see also Chikovsky v. Ortho Pharm. Corp.*, 832 F. Supp. 341, 342 (S.D. Fla. 1993) ("Under Fed. R. Evid. 702, knowledge connotes more than a subjective belief or unsupported speculation."). Dr. Liebschner did not inspect or review any individual unit at issue nor does he have any knowledge which of the inventory is undamaged, nor did he review any data on any specific inventory in this matter. However, Dr. Liebschner still opines that the equipment can be reprocessed even though he himself admitted that he does not know if reprocessing this equipment is permissible/legal in either Puerto Rico or Florida.

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that this Honorable Court enter an Order precluding the above opinions of Mr. Daniel and Dr. Liebschner.

Dated: November 19, 2019

**Respectfully submitted,**

 /s/ William B. Milliken
**William B. Milliken**
Florida Bar No.: 143193
wmilliken@admiral-law.com
**Craig P. Liszt**
Florida Bar No.: 63414
cliszt@admiral-law.com
HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL  33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
***Attorneys for Defendant, Atlantic Biologicals, Corp.***

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on November 19, 2019 we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

 /s/ William B. Milliken
**William B. Milliken**
Florida Bar No.: 143193
wmilliken@admiral-law.com
**Craig P. Liszt**
Florida Bar No.: 63414
cliszt@admiral-law.com
*Attorneys for Defendant, Atlantic Biologicals, Corp.*

1155/1529700

## SERVICE LIST

**Andrew R. Spector**
Florida Bar No.: 634093
andrew.spector@spectorrubin.com
SPECTOR RUBIN, P.A.
Continental Plaza
3250 Mary Street, Suite 405
Miami, FL 33133
Telephone: (305) 537-2000
Facsimile: (305) 537-2001
*Attorneys for Plaintiff,*

**Robert L. Reeb**
Florida Bar No.: 6198415
rreeb@mmr-law.com
Marwedel, Minichello & Reeb, P.C.
303 W. Madison Street, Suite 1100
Chicago, IL 60606
Telephone: (312) 445-5314
Facsimile:
*Co-Counsel for Plaintiff,*

**William B. Milliken**
Florida Bar No.: 143193
wmilliken@admiral-law.com
**Craig P. Liszt**
Florida Bar No.: 63414
cliszt@admiral-law.com
HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL 33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
*Attorneys for Defendant, Atlantic Biologicals, Corp.*