UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. 18-23276-Civ (Cooke/Goodman)

| | |
|---|---|
| U.S. SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) ) |
| ATLANTIC BIOLOGICALS CORPORATION | ) ) ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S *DAUBERT* MOTION
TO EXCLUDE PLAINTIFF'S EXPERT WITNESSES**

Plaintiff, U.S. Specialty Insurance Company ("USSI"), by and through its undersigned counsel, Robert L. Reeb of Marwedel, Minichello & Reeb, P.C., and pursuant to Federal Rule of Evidence 702, hereby respectfully submits its Response to the Defendant's Motion challenging the admissibility of Plaintiff's expert witnesses, Mr. Burl Daniel and Dr. Michael Liebschner, pursuant to the doctrine laid out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**MEMORANDUM AT LAW**

I.   THE STANDARD FOR EXPERT TESTIMONY IN FEDERAL COURT

The admissibility of expert opinion testimony in the federal courts is governed by Federal Rule of Evidence 702, as amended by the U.S. Supreme Court's ruling in *Daubert*, 509 U.S. 579. Rule 702 states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the

1

> testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED R. EVID. 702. The U.S. Court of Appeals for the Eleventh Circuit has categorized these requirements as the rule's "qualification," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*); *see also City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589); *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001). In challenging the competence of a witness to provide opinion testimony in a case, the burden is on the movant to establish that the expert or the expert's testimony lacks one or more of these requirements; the burden then shifts to the non-moving party to show by a preponderance of the evidence that the expert does in fact meet this standard. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004) (citing *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999)). This standard is applicable to all expert testimony and not just "scientific" testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ("We conclude that Daubert's general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge").

While the trial court serves as gatekeeper on all evidentiary issues, the *Daubert* rule "is not intended to supplant the role of the adversary system or the jury." *Maiz*, 253 F.3d at 666 (quoting *Allison*, 184 F.3d at 1311). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting *Daubert*, 509 U.S. at 596)).

In general, an expert is allowed to testify to business practices and industry customs. *United States v. Leo*, 941 F.2d 181, 196-97 (3d Cir. 1991); *see also O'Brien v. NCL (Bah) Ltd.*, No. 16-23284-CIV-LENARD/GOODMAN, 2017 US Dist. LEXIS 216814, at *21 (S.D. Fla. Oct. 13, 2017). In the context of an insurance case, an expert on insurance may testify as to practice and custom within the insurance industry. *See Houston Spec. Ins. Co. v. Vaughan*, No. 8:15-cv-2165-T-17AAS, 2017 U.S. Dist. LEXIS 225069, at *7-8 (M.D. Fla. April 13, 2017)

(citing *Copper v. Pac. Life Ins. Co.*, No. CV203-131, 2007 U.S. Dist. LEXIS 8350, at *4-5 (S.D. Ga. Feb. 6, 2007)) ("courts in this circuit have allowed insurance industry experts to testify regarding industry custom and practice, but have refused to admit testimony that purports to offer legal conclusions or tells the jury what result to reach"); *see also Moore v. Geico Gen. Ins. Co.*, 758 F. App'x 726, 731 (11th Cir. 2018); *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1505 n.8 (11th Cir. 1993) (favorably citing testimony of insurance expert on industry claims practice and procedure).

In addition, FRE 704 states: "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Thus, "an expert is permitted to testify on an ultimate issue of fact," as opposed to legal conclusions. *See Cawthorn v. Auto-Owners Ins. Co.*, No. 6:16-cv-2240-Orl-28GJK, 2018 U.S. Dist. LEXIS 67720, at *20 (M.D. Fla. 2018) (quoting *Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir 1990)), *modified on other grounds*, 2018 U.S. Dist. LEXIS 68045 (M.D. Fla. Feb. 21, 2018).

As a preliminary matter, Defendant's Motion cites almost exclusively to deposition testimony of Burl Daniel and Michael Liebschner while ignoring these experts' reports. This type of cherry-picking of the expert's testimony is unpersuasive under Rule 702, which suggests that the entire basis for an expert's opinion at trial must be considered by a court in ruling on a *Daubert* motion. *See, e.g.*, *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341-1343 (11th Cir. 2013) (standing for proposition that a district court must look to the entirety of an expert's proffered testimony before excluding that expert's entire report under a *Daubert* challenge). Defendant's lack of reference to the reports points to the weakness of its overall position in this Motion, given that both expert reports establish that these experts are competent to testify in this matter. The reports of Plaintiff's experts, Mr. Daniel and Dr. Liebschner, are attached as Exhibits A and B, respectively, to this Response.

## II.   THE TESTIMONY AND OPINIONS OF BURL DANIEL, INSURANCE EXPERT

Defendant challenges the admissibility of Plaintiff's insurance expert, Burl Daniel, and his report in this case. *See* Defendant's Daubert Challenge to Plaintiff's Expert, ECF No. 53. Mr. Daniel has more than four decades of experience as an insurance agent issuing

3

hundreds of marine and inland coverage policies and was hired by Plaintiff to offer testimony on standard practices when issuing a policy like the one before the Court in this case. Expert Report of Burl Daniel, Ex. A at 1; *see also* Curriculum Vitae of Burl Daniel, Ex. A to Ex. A at 1. As an insurance agent, Mr. Daniel provided underwriting and policy placement services and claims handling assistance to his clients and "a significant portion of [his] claims handling experience dealt with windstorm claims." Expert Report of Burl Daniel, Ex. A at 1. As an insurance expert witness, Mr. Daniel has offered analysis and testimony on underwriting, coverage, and claims handling issues in the inland marine, ocean marine, and property insurance sectors. *Id.*

While Defendant rarely if ever cites to a specific record provision in its Motion, Defendant seems to be challenging Mr. Daniel's testimony on three main points: (1) statements made as to the *uberrimae fidei* doctrine constitute impermissible legal conclusions; (2) statements about whether or not the goods at issue were covered in the policy's "Goods Covered" clause constitute impermissible legal conclusions;[1] and (3) statements about the willfulness of Defendant's failure to advise Plaintiff of a prior loss constitute impermissible speculation. Mr. Daniel's report and related opinions survive the *Daubert* standard as to these challenges because Mr. Daniel was opining on insurance industry practice and therefore not infringing on the province of the Court.

**1. Mr. Daniel's opinions regarding *uberrimae fidei* are admissible because they are in regard to ultimate facts and are based on custom and practice in the insurance industry.**

Defendant asserts that Mr. Daniel offered an opinion as to applicability of the *uberrimae fidei* doctrine in this case that constitutes a legal conclusion. It is true that an expert may not testify as to the legal conclusions, which is reserved to the Court or the jury. *See Montgomery*, 898 F.2d at 1541. However, in offering an opinion on the *uberriame fidei* doctrine in his deposition testimony, as well as in his report, Mr. Daniel was merely attesting to standard practice within the insurance industry and was offering no guidance on the legal implications of that doctrine to this case. *See Suter v. Gen. Accident Ins. Co.*, 424 F.

---

[1] Plaintiff acknowledges the Court's ruling on its Motion for Summary Judgment issued on the day this Response is due, which concludes that that Goods Insured clause is ambiguous. In light of that ruling, Plaintiff will not be offering testimony at trial by either expert that goes to that issue, but reserves all issues as a matter of record.

4

Supp. 2d 781, 792-93 (D.N.J. 2006) ("Where an expert is opining as to custom and practice in a particular business, and where someone who is an expert in a particular field would be expected to understand the ways in which the laws affect the business, such testimony [as to a general understanding of laws affecting this business] such be admitted"); *see also Travelers Indem. Co. v. Royal Oak Enters., Inc.*, No. 5:02-cv-58-Oc-10GRJ, 2004 U.S. Dist. LEXIS 29575, at *10 (M.D. Fla. Aug. 20, 2004) ("[W]here, as here, the substance of the expert's testimony concerns ordinary practices and trade customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the insurance industry, [expert's] passing reference to a legal principle or assumption in an effort to place his opinions in some sort of context will not justify the outright exclusion of the expert's report in its entirety"). Defendant cites the following exchange from Mr. Daniel's deposition transcript:

> Q. Is it your insurance-expert opinion that the doctrine of uberriame fidei applies in all insurance policies?
> A. It may not be referred to as uberrimae fidei. I mean, I think I find that, in my experience, specific to marine. But, yeah, you got to disclose – you can't have two car wrecks in Oklahoma and you get a new Texas driver's license, move down here, and expect the cheapest auto insurance. You've got to disclose that. It's material underwriting data as to the nature of the risk.
> Q. Okay. Let's exclude the term "uberrimae fidei." Does the duty to deal with each other in utmost good faith apply in all insurance policy transactions that you're aware of, as an insurance expert?
> A. Yes. Both ways.

Deposition of Burl Daniel, Defendant's Ex. 1 at 148:5-21, ECF No. 53-1.

At no point in this exchange is Mr. Daniel doing anything other than offering his opinion on the duty to disclose relevant information when underwriting a policy within the insurance industry. He does not presume to instruct the court on the correct result to reach on the legal issue of whether or not the *uberrimae fidei* doctrine applies in this case. Rather, he refers to his familiarity with the doctrine based on his experience and insurance trade references. *See* Expert Report of Burl Daniel, Ex. A at 4. In his deposition testimony, he

testified as to the cases for which he had been previously engaged as an expert in which *uberrimae fidei* was an issue. Deposition of Burl Daniel, Defendant's Ex. 1 at 100-03, ECF No. 53-1. He also testified that it is his understanding that the doctrine pertains particularly to marine insurance. *Id.* at 105. He did not offer an opinion in his report that *uberrimae fidei* applies to all types of insurance, nor is this an issue in this case, nor does Plaintiff intend to offer that as an opinion at trial.

In addition, one of the issues the Court will need to determine in this case is whether or not Defendant failed to supply a material fact when reapplying for insurance, and thus breached its *uberrimae fidei* duty under the policy; the standard for whether or not a fact is material hinges on whether or not the fact, if disclosed, would have "controlled the underwriter's decision to accept the risk." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2d Cir. 1987). This determination will inevitably require reference to industry expertise and this is precisely what Mr. Daniel supplies to the Court in his report.

Defendant's contention that the parties contracted out of the *uberrimae fidei* doctrine is also incorrect. This issue is the subject of a summary judgment motion pending before this Court and has been fully briefed by the parties. Defendant raised the issue that it contracted out of *uberrimae fidei* in its response to Plaintiff's summary judgment motion, Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment at 7, ECF No. 38, and Plaintiff rebutted that issue in its Reply brief by pointing to the presence of a clause in the subject policy that specifically incorporates the *uberrimae fidei* standard. Plaintiff U.S. Specialty Insurance Company's Reply In Support of Its Motion for Summary Judgment at 6-7, ECF No. 40. The *uberrimae fidei* doctrine applies to this insurance policy and Defendant's contention that it did not is inappropriate in this *Daubert* Motion.

**2. Mr. Daniel's opinions regarding Defendant's failure to notify Plaintiff of a prior major claim are admissible.**

Defendant argues that Mr. Daniel has rendered the opinion that defendant's failure to disclose a prior claim of $343,080 was "willful." Once again, Defendant does not cite to any specific portion of Mr. Daniel's expert report or deposition testimony. Defendant's Daubert Motion, Doc. 53-1, at 10. However, this was an opinion that defense counsel elicited on cross-examination, and was not an opinion expressly rendered by Mr. Daniel in

6

his report. Rather, in his report, Mr. Daniel made extensive review of the testimony and documents relating to the underwriting of the Policy at issue. *See* Expert Report of Burl Daniel, Ex. A at 5-13. At page 8 of his report, he renders the conclusion that Defendant knew about the $343,080 loss immediately prior to seeking coverage with Plaintiff, did not disclose that fact to Plaintiff, and that such a fact was material to the underwriter's consideration of placing coverage. In addition, during his deposition, he testified to the conclusion that there was a clear "omission" by Defendant that, in his view, rose to the level of "intention." These opinions are based on the record compiled in his report showing the history of the underwriting and the underwriting communications, and is based on far more than mere speculation. Deposition of Burl Daniel, Defendant's Ex. A, Doc. 53-1, at 159-61.

Mr. Daniel's opinion on this point is supported by an adequate basis in fact. Evidence in the record of this case indicates that Defendant failed to provide a version of the policy for the year in which a prior loss was incurred when renewing insurance coverage for the period at issue in this case. Expert Report of Burl Daniel, Ex. A at 5. Other evidence in the record shows that Defendant was aware of the prior loss at the time, raising the inference that its failure to provide this information during the renewal process suggests that it did so in order to secure ongoing coverage at a more desirable rate. *Id.* at 5-13. For example, Mr. Daniel cites in his report a December 22, 2016 email between Jack Rosmarin and Luis Alday in which these two employees of Defendant discuss the prior loss shortly before submitting an insurance renewal to Plaintiff that fails to mention this loss. *Id.* at 8.

Nothing about this is impermissible under *Daubert*. Mr. Daniel is citing to facts that are already before the Court and is offering his opinion as to the inference raised by these facts. Mr. Daniel has met the reliability, the helpfulness, and the qualification prongs of the *Daubert* test and no basis exists for the Court to exclude his report. The Court is free to weigh whatever inferences or conclusions of fact Mr. Daniel raises in his report however it deems prudent, but no basis exists for excluding the report, or his opinions, altogether.

### III.  THE OPINIONS AND TESTIMONY OF DR. MICHAEL LIEBSCHNER

Defendant challenges the admissibility of Plaintiff's biomedical device expert, Dr. Michael Liebschner, and his opinions in this case. Dr. Liebschner is a mechanical engineering Ph.D. who has helped design biomedical devices for remedying orthopedic

7

injuries. See 54-58 of Exhibit B hereto, Report of Findings of Michael Liebschner, Attachment F, Curriculum Vitae. He has twenty years of experience in the biomedical research field and the medical device industry. *Id.* The failure of medical devices is one of his main areas of consulting. *Id.* One of his cited areas of "Product Assessments" states that he "[e]valuated damage to a robotic pharmacy storage system after flooding and establish repairability [*sic*]." *Id.*

Defendant's *Daubert* challenges involving Dr. Liebschner revolve around two core objections: (a) Dr. Liebschner relied on FDA guidelines to determine if goods at issue in this case constituted "pharmaceuticals" when the insurance policy makes no mention of FDA guidelines and (b) Dr. Liebschner stated that goods damaged in this case could be reprocessed without stating a sufficient basis for this conclusion. Neither argument is availing. Given the Court's recent ruling on summary judgment, USSIC will only address the second of the arguments, as this first goes to the issue of the meaning of a term used in the Policy's Goods Insured clause.

**1. Dr. Liebschner's opinion that the medical devises which Defendant claims are a total loss can be reprocessed under Federal Drug Administration ("FDA") guideless is admissible and supported by reliable evidence.**

Dr. Liebschner devotes a major portion of his expert report to detailing the processes by which the medical devices which defendant claims are a total loss may be reprocessed for further use, as opposed to being discarded, pursuant to FDA guidelines. Expert Report of Michael Liebschner, Ex. B at 8-12. Dr. Liebschner also testified as to these opinions in his deposition. *See* Deposition of Dr. Liebschner, Defendant's Ex. 2 at 38-40, 52-55, ECF 53-2. Defendant objects to this opinion as being either subjective belief or unsupported speculation because Dr. Liebschner did not inspect the goods himself to determine which of the inventory was "undamaged". Defendant futher objects that that Dr. Liebschner does not know if such reprocessing is permitted in Florida or Puerto Rico. Defendant's Daubert Motion at 12, ECF No. 53.

However, Dr. Liebschner's opinions will be offered by Plaintiff in rebuttal to Defendant's counterclaim for insurance coverage and to its claim that the goods are a total loss, and a full payment should be made for invoice value. It will be Defendant's burden to establish that the goods for which it seeks recovery under the policy were a total loss or a

8

constructive total loss due to contamination or mold, as contended in its action.[2] Dr. Liebschner's Report and supporting materials show that he reviewed the records in the case relating to the alleged loss and damage to the goods. *See* Expert Report of Michael Liebschner, Ex. B at 3-6, 14; Attachments A and B. He testified that he saw no evidence in the record presented establishing that any of the goods were actually contaminated by mold, whether in the form of pictures or lab reports. Deposition of Michael Liebschner, Defendant's Ex. 2 at 51-52, ECF No. 53-2. It is Dr. Liebschner's opinion, based on his experience, training and his research in this case, that the medical devices at issue, even if they were contaminated as alleged, can, under FDA guidelines, be reprocessed and resused. Expert Report of Michael Liebschner, Ex. B at 8-13. His conclusions are based on a review of the specifications of the devices at issue, the pertinent regulations and guidelines, and the type of damages alleged (wetting and mold). His lack of a personal inspection has no bearing on these opinions. There has certainly been no suggestion or evidence offered in this case or in opposition to his opinions that the devices at issue sustained any other kind of damage. Defendant has offered no contrary opinions and no evidence that the devices cannot be re-sterilized and used.

Furthermore, while Dr. Liebschner offers no opinion on whether Puetro Rico or Florida restrict such reprocessing of medical devices, he does opine that the FDA has jurisdiction over Puero Rico, and clearly the FDA is a federal agency. These are not the only two jurisdictions in the country where medical devices are sold and utilized. In the end, it will be Defendant's burden to show that the devices were actually damaged and suffered a total loss or constructive total loss under the Policy, and Dr. Liebschner's opinions are useful and relevant to the Court in showing that Defendant has put forward no evidence that the goods are actually a total loss and cannot be rehabilitated at a cost less than the total amount claimed by Defendant.

Dr. Liebschner's opinions are clearly not speculative, are based on his experience and education, a review of the record, and on federal guidelines pertaining the reprocessing of medical devices such as the devices at issue where they have been exposed to alleged contamination. His opinions are relevant and useful to the Court in evaluating the claimed

---

[2] Paragraph 52 of the Policy controls a claim for Constructive Total Loss. See Exhibit A to Amended Complaint, ECF 44-2. That provisions requires a showing that the goods cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

damages and cause of loss, and there is no challenge to his expertise to render the proffered opinions.

## IV.     CONCLUSION

The expert reports and opinions of Dr. Michael Liebschner and Mr. Burl Daniel both meet the *Daubert* standards for the qualification of experts, the reliability of the methods on which experts must base their opinions, and the opinions' helpfulness to the Court. This Court should deny Defendant's Motion.

Respectfully submitted,

By:   /s/ *Andrew Spector*
Andrew R. Spector, Esq.
Florida Bar No.: 634093
**SPECTOR RUBIN, P.A.**
3250 Mary Street, Suite 405
Miami, Florida 33133
Tel: 305.537.2000
Fax: 305.537.2001
Andrew.spector@spectorrubin.com

-and-

By:   /s/ *Robert L. Reeb*
*Admitted Pro Hac Vice*
Attorney No.: 6198415
**MARWEDEL, MINICHELLO & REEB, P.C.**
303 W Madison Street
Suite 1100
Chicago, IL 60606
Tel: 312.445.5314
rreeb@mmr-law.com

*Attorneys for Plaintiff U.S. Specialty Insurance Company*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on December 6, 2019 we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

Respectfully submitted,

By: /s/ *Andrew Spector*
Andrew R. Spector, Esq.
Florida Bar No.: 634093
**SPECTOR RUBIN, P.A.**
3250 Mary Street, Suite 405
Miami, Florida 33133
Tel: 305.537.2000
Fax: 305.537.2001
Andrew.spector@spectorrubin.com

-and-

By: /s/ *Robert L. Reeb*
*Admitted Pro Hac Vice*
Attorney No.: 6198415
**MARWEDEL, MINICHELLO & REEB, P.C.**
303 W Madison Street
Suite 1100
Chicago, IL 60606
Tel: 312.445.5314
rreeb@mmr-law.com

*Attorneys for Plaintiff U.S. Specialty Insurance Company*

## SERVICE LIST

**Craig Patrick Liszt**
Horr, Novak and Skipp, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Blvd.
Miami, Florida 33156
(305) 670-2525
cliszt@admiral-law.com
*Attorney for Defendant, Atlantic Biologicals*

**William Barry Milliken**
Horr, Novak and Skipp, P.A.
9130 South Dadeland Blvd.
Suite 1700
Miami, Florida 33156
(305) 670-2525
Fax: (305) 670-2526
wmilliken@admiral-law.com
*Attorney for Defendant, Atlantic Biologicals*

**Guillermo Luis Dominguez**
Fowler Rodriguez LLC
355 Alhambra Circle
Suite 801
Coral Gables, Florida 33134
(786) 364-8400
Fax: (786) 364-8401
gdominguez@frfirm.com
*Attorney for Defendant, Atlantic Biologicals*