UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 18-CV-23276/GOODMAN
[CONSENT CASE]

U.S. SPECIALTY
INSURANCE COMPANY,

    Plaintiff,

vs.

ATLANTIC BIOLOGICALS
CORPORATION,

    Defendant.

_____/

## **DEFENDANT'S REPLY IN SUPPORT OF *DAUBERT* MOTION**

The Defendant, ATLANTIC BIOLOGICALS CORPORATION, by and through undersigned counsel, hereby respectfully submits this Reply in support of its *Daubert* Motion to challenge the admissibility of experts' opinions that Plaintiff intends to present at trial, and states as follows:

**I.   BURL DANIEL'S TESTIMONY IS COMPRISED OF INADMISSBLE LEGAL CONCLUSIONS AND IS NOT HELPFUL TO THE COURT**

Mr. Daniel asserts ten "opinions" in his report. ECF 58-1, pages 23-24 (page reference is to the page of the ECF filing rather than the numbers used by Mr. Daniel in his report).

The first, that there is nothing in the case documents to substantiate Atlantic's denials that the subject policy is a cargo policy. This is a statement of fact regarding the evidence he reviewed. It is neither an opinion or relevant to the issues in this case. As such, it is not helpful to the trier of fact and should be excluded.

Second, that Atlantic's assertion Plaintiff could provide the same coverage as Atlantic's prior policy having no factual basis. Again, this a statement regarding the evidence provided to Mr. Daniel and is not relevant to the issues in the case. As such, it is not helpful to the trier of fact and should be excluded.

Third, that there was no written communication to Plaintiff to match the exact coverage from Atlantic's prior policy. This is simply a statement of what evidence exists or doesn't exist. It is not an opinion for which expert testimony is needed.

Fourth, regarding the implant trays being mentioned in the policy. Again, this is a statement of fact for which no expert opinion is necessary.

Fifth, that Plaintiff could not have utilized a Lloyds form and that Pascul reviewed the Goods Insured clause. These are also statements of fact for which no expert opinion is necessary, nor are the issues relevant to the issues of this case.

Sixth, that Atlantic's assertion that the Goods Insured clause in ambiguous is without merit. This opinion has been rendered irrelevant by virtue of the Court's ruling on Plaintiff's motion for summary judgment where the Court found that the Goods Insured clause is ambiguous. ECF 57, page 7.

Seventh, that there was no ambiguity regarding goods incidental to the Assured's business. This opinion has been rendered irrelevant by virtue of the Court's ruling on Plaintiff's motion for summary judgment where the Court found that the Goods Insured clause is ambiguous. ECF 57, page 7.

Eighth, that Atlantic's failure to disclose a prior loss violated the duty of utmost good faith (*uberrimae fidei*) and provided a basis for voiding the policy at inception. In ruling on Plaintiff's motion for summary judgment, the Court found persuasive Atlantic's argument that

the parties contracted out of the uberrimae fidei doctrine. See ECF 57, at page7. As such, Mr. Daniel's opinion regarding same is not relevant nor helpful.

Ninth, that it is Mr. Daniel's opinion that the denial of the claims was based on solid ground and properly explained to Atlantic. This is a legal conclusion regarding the interpretation of the insurance policy and is therefore inadmissible under *Daubert*.

Tenth, that it is his opinion that the claims asserted by Atlantic are not covered under the policy. Again, this is a legal conclusion telling the trier of fact the result to reach and is therefore not admissible under *Daubert*.

"Expert opinions are inadmissible to the extent that they contain legal conclusions regarding the expert's interpretation of contracts, insurance policies, or other legal documents." *Hibbett Patient Care, LLC v. Pharmacists Mut. Ins.* Co., No. 16-0231-WS-C, 2017 U.S. Dist. LEXIS 72786, at *5 (S.D. Ala. May 12, 2017). An expert witness "may not testify to the legal implications of conduct" or tell the Court what result to reach. *Quevedo v. Iberia Lineas Aereas de Espana S.A. Operadora Unipersonal*, No. 17-21168-CV, 2018 U.S. Dist. LEXIS 174771, at *17 (S.D. Fla. Oct. 11, 2018) (quoting *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Meaning that an "[e]xpert witness['s] testimony that suggests the ultimate result … is not helpful." *Bouton*, 2017 U.S. Dist. LEXIS 174989, at *40-41 ("[A] witness also may not testify to the legal implications of conduct.") (internal citation omitted). The Eleventh circuit has stressed that "merely telling … result to reach is unhelpful and inappropriate." *Umana-Fowler v. NCL (Bah.) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)); *see also Jordan v. Celebrity Cruises, Inc.*, No. 1:17-20773-Civ, 2018 U.S. Dist. LEXIS 125346, at *25 (S.D. Fla. July 25, 2018) ("[T]he Eleventh Circuit has repeatedly held that legal conclusions or statements instructing what conclusion [to] reach are impermissible under *Daubert*."). "Courts must remain

vigilant against the admission of legal conclusions." *Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2019 U.S. Dist. LEXIS 45668, at *35 (N.D. Ga. Feb. 25, 2019) (quoting *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977)). Simply, "an expert witness may not testify as to his opinion regarding ultimate legal conclusions." *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009) (citing *Montgomery,* 898 F.2d at 1541 (11th Cir. 1990) ("A witness ... may not testify to the legal implications of conduct.")). While experts may testify as to opinions regarding issues of fact, it is improper for an expert to opine on ultimate legal conclusions. *Umana-Fowler*, 49 F. Supp. 3d at 1122.

Lastly, Mr. Daniel opined during his deposition that Atlantic's failure to advise Plaintiff of the prior loss was willful. However, his opinion is based upon pure speculation:

> Q. Do you have any evidence to suggest that the nondisclosure of the $343,000 loss was willful or intentional?
>
> A. That's what it appeared to be.
>
> Q. On what basis?
>
> A. Well, look at page 8. Alday, from my understanding, was the source of information to Pascul. He was the insurance -- he did all the insurance for several -- many years for ABC and the entities. UDS or UDose, which Pascul managed, was under -- they kept it under the umbrella -- it was included on the policy. They "piggyback" is -- I think was Alday's terminology. So you have all your seven or eight named insureds. So on December 22, Rosmarin remind -- "Keep in mind, they paid a $343,000 claim. They're bumping their rate a little bit, but it's a pretty good deal. We think it's fair." He knew about this three weeks before he gives Alday a year-and-a-half or two-year-old policy to work from. It's not weird in the marine business to do that. It's what -- the information you have at the moment.
>
> Q. So the fact that Alday knew about the loss makes you believe that he intentionally -- or that Janett intentionally withheld it from USSI.
>
> A. I don't think Janett did, because I don't think she really understood insurance. She didn't even know what implants were. I

> think Alday understanding they were going out for quotes, was fairly clear to me, absolutely knew about it.
>
> Q. I didn't ask if he knew about it --
>
> \*               \*               \*
>
> Q. Did he intentionally withhold it.
>
> A. That is my impression.
>
> Q. Okay. Based solely on the fact that he knew about it?
>
> A. Based on he'd been reminded of it recently, even if he hadn't seen the loss runs, of 343,000.
>
> Q. Okay. Did you see anything in the materials that suggested to you that Alday knew that it hadn't been disclosed to USSI?
>
> A. I don't know how he couldn't if he -- if he only gave Janett the '14/15. It's logic to me.
>
> Q. So the answer is, no, you haven't seen anything that shows you that Mr. Alday knew that that loss had not been disclosed to USSI?
>
> A. InSource never got it from Pascul. It appeared to -- I said it's my impression.

Daniel deposition, 148:22 - 150:23.

> Is there any document that specifically shows you Mr. Alday was aware that this information had not been passed along to USSI?
>
> A. And my answer earlier, a minute or two earlier, was, no, I did not see a specific document. That's my impression following the -- trying to follow the bouncing ball.
>
> Q. Okay. That's an assumption you're making based on the evidence that you have seen, correct?
>
> A. That's an assumption -- I mean, it's the conclusion I'm drawing based on the amount of information that was in ABC's files.

Daniel deposition, 152:6-17.

Based on the foregoing, Mr. Daniel's opinions are based upon improper assumptions, are not helpful to the court, or consist of legal conclusions which are not admissible pursuant to *Daubert*.

## II. PLAINTIFF'S EXPERT MICHAEL LIEBSCHNER'S OPINIONS ARE UNSUPPORTED AND DO NOT HELP THE COURT

Dr. Liebschner offers seven opinions in his report: five of which are specific to classification of the goods at issue in this case and two which relate to reprocessing / sterilization of the subject goods. See ECF 58-2, page 5 (reference is to the page of the ECF filing rather than the numbers used by Dr. Liebschner in his report).

Defendant initially moved to exclude Dr. Liebschner's opinions based on the argument that the FDA guidelines have no bearing on classification of the subject goods and that his opinion regarding reprocessing the goods is pure speculation as he does not know whether reprocessing is permissible in the location where the goods are stored or intended to be sold.

As the Court has now ruled that the policy's "Goods Insured" clause is ambiguous, and when interpreted in the insured's favor[1], does not bar coverage for Defendant's claims, Dr. Liebschner's opinions regarding FDA classification of the goods (numbers 1 – 5 in his report) are no longer relevant to the instant matter.

Dr. Liebschner's opinions that the medical devices can be reprocessed is wholly unsupported and not based upon reliable evidence.

During his deposition, Dr. Liebschner admitted:

1. He cannot provide any opinion whether any of the specific goods at issue in this case were damaged or not damaged:

---

[1] Under New York law, ambiguous terms in an insurance policy are to be construed against the drafter. *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 306 (2d Cir. 1987).

Q. Do you have any intention of testifying that any of the items at issue in the claims were not damaged?

A. Can you say that again?

Q. Yes. Are you going to provide any testimony that the items that are at issue in this claim were damaged or not damaged? Or are you --

[form objection by Mr. Reeb]

A. I cannot.

Q. Okay. You have no opinion one way or the other that any of those devices listed in your report were not damaged; is that correct? A. Either damaged or not damaged. So I don't have an opinion because, for example, I don't have any independent test data that says they are or they're not.

Liebschner depo, 36:7-22.

2. He cannot provide any opinions as to whether any of the specific goods in this case are repairable or replaceable:

Q. Okay. Are you going to offer -- or do you have any opinions as to which items are repairable versus replaceable?

A. No.

Liebschner depo, 36:23-37:1.

3. He cannot advise the Court whether repurposing or cleaning the goods is permissible in the jurisdictions the goods are intended to be sold:

Q. …And when we talked about -- and I just want to make sure my understanding is correct -- whether these goods could be repurposed in connection with Mr. Reeb's questions, and you said yes, that's contingent on that being allowed in the particular state or jurisdiction where they're to be used, correct?

A. That is correct.

Q. And we don't know if they're allowed to be repurposed in Puerto Rico or Florida, do we?

A. Correct.

Liebschner depo, 61:12-21.

4. Even if repurposing or cleaning the goods was permissible in the jurisdictions in which they are intended to be sold, he cannot provide the Court with an estimate of the cost to do so:

> Q. Okay. And the cleaning for the devices you estimated somewhere between one hundred thousand and five hundred thousand. Where did you get that number?
>
> A. From working with one of the companies and getting quotes for other types of applications. And also cleaning applications establishing sterilization protocols.
>
> Q. Is there anything in your report that shows how much it would cost to clean the knee implants in this case?
>
> A. No.
>
> Q. Is there anything in your report that would show how much it would cost to clean any of these specific medical devices that are listed in this case?
>
> A. No, there's not because it was outside the scope of my work.
>
> Q. Okay. So the estimate of cleaning and the preparation of the applications is outside the scope of your opinions in this case?
>
> A. Yes. The scope of my work included the determination if there is a process in place that these devices can be cleaned.

Liebschner depo, 60:15-61:11.

Thus, while there may be an FDA approved method of cleaning the subject goods, Dr. Liebschner cannot tell the Court which of the goods can be cleaned/repurposed, which of the goods are damaged or not damaged, whether cleaning/repurposing the goods is permissible in the jurisdictions in which they are intended to be sold, or the cost to do so. As such, his opinion that there is a process, without being able to apply it to the actual goods it issue in this case, is simply unreliable and unsupported under *Daubert* and should be excluded.

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that this Honorable Court enter an Order precluding the above opinions of Mr. Daniel and Dr. Liebschner.

Dated: December 19, 2019                             **Respectfully submitted,**

  /s/ *Craig P. Liszt*
**William B. Milliken**
Florida Bar No.: 143193
wmilliken@admiral-law.com
**Craig P. Liszt**
Florida Bar No.: 63414
cliszt@admiral-law.com
HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL  33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
***Attorneys for Defendant, Atlantic Biologicals, Corp.***

# CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on December 19, 2019 we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

 /s/ *Craig P. Liszt*
**William B. Milliken**
Florida Bar No.: 143193
wmilliken@admiral-law.com
**Craig P. Liszt**
Florida Bar No.: 63414
cliszt@admiral-law.com
***Attorneys for Defendant, Atlantic Biologicals, Corp.***

1155/1529700

## SERVICE LIST

**Andrew R. Spector**
Florida Bar No.: 634093
andrew.spector@spectorrubin.com
SPECTOR RUBIN, P.A.
Continental Plaza
3250 Mary Street, Suite 405
Miami, FL  33133
Telephone: (305) 537-2000
Facsimile:  (305) 537-2001
*Attorneys for Plaintiff,*

**Robert L. Reeb**
Florida Bar No.: 6198415
rreeb@mmr-law.com
Marwedel, Minichello & Reeb, P.C.
303 W. Madison Street, Suite 1100
Chicago, IL  60606
Telephone: (312) 445-5314
Facsimile:
*Co-Counsel for Plaintiff,*

**William B. Milliken**
Florida Bar No.: 143193
wmilliken@admiral-law.com
**Craig P. Liszt**
Florida Bar No.: 63414
cliszt@admiral-law.com
HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL  33156
Telephone: (305) 670-2525
Facsimile:  (305) 670-2526
*Attorneys for Defendant, Atlantic Biologicals, Corp.*