U.S. SPECIALTY INSURANCE
COMPANY,

      Plaintiff,

v.

ATLANTIC BIOLOGICALS
CORPORATION,

      Defendant.

_____/

**ORDER ON DEFENDANT'S *DAUBERT* MOTION TO PRECLUDE THE OPINIONS OF PLAINTIFF'S EXPERTS BURL DANIEL AND DR. MICHAEL LIEBSCHNER**

In this insurance coverage declaratory judgment action, Defendant Atlantic Biologicals Corporation ("Atlantic") has filed a *Daubert* motion designed to preclude specific opinions of Plaintiff U.S. Specialty Insurance Company ("USSIC")'s experts Burl Daniel and Dr. Michael Liebschner. [ECF No. 53]. USSIC filed a response in opposition [ECF No. 58] and Atlantic filed a reply [ECF No. 61]. For the reasons outlined below, the Court **grants in part** and **denies in part** Atlantic's *Daubert* motion as it relates to Daniel and **denies** Atlantic's *Daubert* motion as it relates to Liebschner.

# I.     Factual Background

This is a case about insurance coverage for losses relating to Hurricane Maria and Hurricane Irma under a marine insurance policy issued by Plaintiff U.S. Specialty Insurance Company ("USSIC"). USSIC issued a marine insurance policy to Atlantic. [ECF No. 29-2, ¶ 1]. The Policy provides insurance coverage for all physical damage to Atlantic's "Goods Insured" during transit from warehouse to warehouse and while being housed in certain warehouse locations. [ECF No. 46-1, pp. 2, 51]. Specifically, "Goods Insured" is defined as: "[c]onsisting principally of: New Pharmaceutical Products and other goods incidental to the business of the Assured [(Insured)], professionally packed for export." *Id.* at p. 2.

On September 29, 2017, Atlantic reported a claim to USSIC due to Hurricane Maria for loss to implant trays and surgical implants at a storage unit located at Avenida 65 Infanteria #7500, Carolina, Puerto Rico 00987 ("Carolina, PR Claim"). [ECF No. 29-2, ¶¶ 30, 32]. On November 9, 2017, Atlantic reported a claim due to Hurricane Irma for water damage to non-invasive surgical endoscopy equipment and parts at 16000 NW 49th Avenue Miami Gardens, Florida 33014 ("Miami Gardens Claim"). *Id.* at ¶¶ 31, 33.

USSIC denied coverage for the Carolina, PR Claim due to its position that the damaged goods were not "Goods Insured" under the Policy. *Id.* at ¶ 45. And USSIC denied coverage for the Miami Gardens Claim because Atlantic failed to provide requested additional information regarding the claim and its position that endoscopy

instruments are not "Goods Insured" under the Policy. [ECF Nos. 29-2, ¶ 47; 9-3]. USSIC also challenges Atlantic's position that the damaged goods were a total loss and cannot be re-processed. [ECF No. 58, pp. 8-9].

USSIC subsequently filed this lawsuit seeking a declaration from the Court that there is no coverage under the Policy for the Carolina, PR Claim and the Miami Gardens Claim because the damaged goods do not fit within the definition of "Goods Insured," and that the doctrine of *uberrimae fidei* voids the policy because Atlantic failed to volunteer a material fact to it -- that it was involved in a prior loss. [ECF No. 46, pp. 23-24]. As alleged in USSIC's Second Amended Complaint, the *uberrimae fidei* doctrine "is an established rule of federal marine insurance law which holds that an insured party has a duty of utmost good faith to disclose all information known to it that materially affects the risk insured against." [ECF No. 46, ¶ 98].

Recently, the Court denied USSIC's summary judgment motion and found that (1) the "Goods Insured" provision is ambiguous here, and if interpreted in Atlantic's favor, does not bar coverage for Atlantic's claims; and (2) the parties likely contracted out of the *uberrimae fidei* doctrine, but, even if they had not, the questions of whether the purported omission was material and relied upon by USSIC are disputed questions of fact. [ECF No. 57].

## II.    The *Daubert* Legal Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702, as explained and refined by the United States Supreme Court in *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993).

Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry: (1) whether the expert is qualified to testify competently; (2) whether the methodology used to reach the conclusions is sufficiently reliable; and (3) whether the testimony assists the trier of fact to understand the evidence or to determine a fact at issue. *Rink v.*

*Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

As an overarching principle, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey*, 298 F.3d at 1256. "In order to be admissible, an expert's testimony must be based on 'more than subjective belief or unsupported speculation.'" *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1167 (S.D. Fla. 1996) (quoting *Daubert*, 509 U.S. at 590). There should be "[s]cientific method; good grounds and appropriate validation." *U.S. v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005).

However, "[i]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003); *see also Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) (citation omitted). Thus, the district court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n. 7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

A less-than-perfect expert opinion may still be admitted, even if it contains gaps. *See In re Trasylol Prods. Liab. Litig.*, No. 08–MD–01928, 2010 WL 1489793, at *6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."). Furthermore, courts "must be careful not to conflate questions of ***admissibility*** of expert testimony with the

weight appropriately to be accorded to such testimony by the fact finder." *Id.* at \*7 (quoting *Quiet Tech*, 326 F.3d at 1341) (emphasis added).

Finally, "[w]hile *Daubert* requires trial courts to act as 'gatekeepers' to ensure a jury is not exposed to speculative, unreliable expert testimony, these concerns are greatly reduced when the expert will testify during a bench trial." *Travelers Prop. Cas. Co. of Am. v. Barkley*, No. 16-61768-CIV, 2017 WL 4867012, at \*1 (S.D. Fla. June 2, 2017) (internal citations omitted). Notwithstanding this, "courts may still go through the individual analyses of the experts or motions, and have granted these motions to strike prior to the bench trial." *Broberg v. Carnival Corp.*, No. 17-CV-21537, 2018 WL 4778457, at \*1 (S.D. Fla. June 11, 2018). Thus, in order to provide to the parties the benefit of the Court's findings as it relates to USSIC's experts prior to trial taking place, the Court will address Atlantic's *Daubert* arguments now.

## III. Analysis

### A. Burl Daniel's Opinions

Burl Daniel is offered by USSIC as a Property and Casualty Insurance Expert Witness. [ECF No. 58-1, p. 25]. Daniel is a Certified Risk Manager, Certified Insurance Counselor, and a Chartered Property Casualty Underwriter. *Id.* He has been in the insurance industry since 1973 and served as an insurance agency principal for 24 years. *Id.* Daniel states in his report that he has placed "hundreds of inland and ocean marine (including Open Cargo) and/or property insurance policies . . . during my years as an

insurance agent." *Id.* at p. 2.

Atlantic seeks to preclude Daniel's opinions because it says they are inadmissible legal conclusions. Specifically, Atlantic points to Daniel's opinions that (1) Atlantic violated its duty of utmost good faith to USSIC and (2) the "Goods Insured" provision is unambiguous and does not cover the damaged inventory. [ECF No. 53, pp. 6-9]. Further, Atlantic argues that Daniel should be precluded from offering his opinion that Atlantic's failure to advise USSIC of a prior loss was ***willful*** because it is based on pure speculation. *Id.* at 10.

USSIC points out that Daniel provides his opinion on the general application of the *ubberimae fidei* doctrine to marine policies, but, contrary to Atlantic's assertion, Daniel does not provide an opinion on the doctrine's specific applicability here. [ECF No. 58, pp. 4-5]. USSIC states that Daniel's opinion testimony -- i.e., that Atlantic's failure to disclose a prior loss was willful or intentional -- is supported by record evidence and thus should not be precluded. *Id.* at pp. 6-7. USSIC does not address Daniel's opinion regarding the ambiguity of the "Goods Insured" provision because at the time USSIC filed its response, the Court had already entered its Order on Plaintiff's Motion for Summary Judgment and determined that the provision is ambiguous. Thus, USSIC represents that it will not offer testimony on that topic at trial. [ECF No. 58, p. 4].

The Court has reviewed Daniel's report. The majority of Daniel's report is the recitation of facts contained in voluminous and technical insurance placement

documents. Daniel does provide a few limited opinions based on his insurance custom and practice expertise, such as whether Atlantic's prior policies provided the same coverage as the subject Policy. The Court finds that (1) Daniel is qualified to provide these opinions, (2) his opinions are reliable based on his extensive insurance experience, and (3) these opinions may assist the Court in understanding the evidence or determining a fact at issue. *See Rink*, 400 F.3d at 1291-92.

But the Court finds that Daniel's opinions that the "Goods Insured" clause is unambiguous and that there is consequently no coverage for the Carolina, PR Claim and the Miami Gardens Claim, to be an impermissible ultimate legal conclusion. An expert may testify as to his opinion on an ultimate issue of fact, "but he may not testify as to his opinion regarding ultimate legal conclusions." *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014). Further, as pointed out by USSIC, the Court has already determined that the "Goods Insured" provision is ambiguous.

Regarding Daniel's opinion that Atlantic violated the doctrine of dealing in utmost good faith by failing to disclose a prior loss, the Court finds this to be a close call in USSIC's favor. The application of the *ubberimae fidei* doctrine is a legal conclusion that the Court must determine. However, Daniel's opinion as to whether Atlantic has violated standard practice and custom by failing to disclose a prior loss may prove somewhat helpful to the Court (if the Court ultimately finds that the parties have contracted out of the *ubberimae fidei* doctrine). *See In re Trasylol Prods. Liab. Litig.*, 2010 WL 1489793, at *6

("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.").

Atlantic will, of course, be free to challenge this opinion during cross-examination and argument, and the Court will afford the appropriate weight to such opinion testimony, recognizing that the Court will ultimately decide whether the *ubberimae fidei* doctrine applies here. *See Quiet Tech.,* 326 F.3d at 1341 (quoting *Daubert,* 509 U.S. at 596) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Finally, regarding Daniel's statements during his deposition that, in his opinion, Atlantic's failure to disclose the prior loss was an "omission" and rose to the level of "intention[al]," Daniel has not included this opinion in his **report**. However, should USSIC offer his deposition statements at trial or otherwise, the Court finds that this opinion is not based solely on speculation, as Daniel points to emails reflecting that Atlantic discussed the loss prior to procuring the Policy from USSIC. Thus, Atlantic's argument goes to the weight of the evidence. In addition, vigorous cross-examination (e.g., probing why Daniel did not offer these statements as actual substantive opinions in his written report) will assist me in determining how much weight, if any, to give to the opinion testimony.

Regardless, because this is a bench trial, "it is presumed the judge will disregard

inadmissible evidence and rely only on competent evidence." *Bujarski v. NCL (Bahamas) Ltd.*, No. 1:15-CV-21066-UU, 2016 WL 7469997, at *1 (S.D. Fla. Jan. 7, 2016).[1]

### B.  Michael Liebschner, Ph.D.

USSIC offers Dr. Liebschner as an expert to provide classification information of the items listed in the loss documents by Atlantic. [ECF No. 58-2, p. 4]. Liebschner's curriculum vitae explains that he has a doctorate in mechanical engineering and twenty years of academic and corporate experience relating to the biomedical and medical device industry. *Id.* at p. 55. His report includes conclusions regarding the Food and Drug Administration (FDA) classifications for the damaged items involved in the Carolina, PR Claim and the Miami Gardens Claim. Additionally, Liebschner provides his opinion

---

[1]    The *Bujarski* Court also noted that traditional rules of admissibility are dramatically different in a bench trial, as opposed to a jury trial:

> It is a well-established principle of law that "[t]he rationale underlying pre-trial motions in limine **does not apply in a bench trial**, where it is presumed the judge will disregard inadmissible evidence and rely only on competent evidence. In fact, courts are **advised to deny motions in limine in non-jury cases**." *Singh v. Caribbean Airlines Ltd.*, No. 13-20639, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014) (citing 9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2411 (3d ed. 2008)). When an action proceeds as a bench trial, the pretrial consideration of such motions "weighs heavily in favor of **denying** the motions in limine and addressing the issues if and when they come up at trial." *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 616 F. Supp. 2d 1250, 1256 (M.D. Fla. 2009). "The more prudent course in a bench trial, therefore, is to resolve all evidentiary doubts **in favor of admissibility**." *Singh*, 2014 WL 4101544, at *1 (emphasis added to bold references in this paragraph).

*Id.*

regarding the re-processing of Atlantic's damaged medical devices.

Atlantic argues that the FDA classification of the damaged goods in this case is not relevant to the "Goods Insured" coverage dispute and will confuse the trier of fact (i.e., the Undersigned). Further, Atlantic argues that Liebschner's opinion regarding the re-processing of medical devices is unsupported because he did not inspect the goods and he does not know if re-processing is permissible/legal in either Puerto Rico or Florida. [ECF No. 53, pp. 10-12].

USSIC does not respond to Atlantic's "Goods Insured" argument because the Court has already determined that provision to be ambiguous. [ECF No. 58, p. 8]. USSIC argues that Liebschner's opinion regarding the re-processing of medical devices after they get wet and moldy to be supported by his extensive experience and research in this case. *Id.* at p. 9.

The Court **denies** Atlantic's request to preclude testimony from Liebschner at trial regarding FDA classifications and re-processing of medical devices. The Court finds that Liebschner is qualified to make these opinions, his opinions are reliable based on his extensive experience, and they may assist the Court in understanding the evidence or determining a fact at issue. *See Rink*, 400 F.3d at 1291-92.

While the Court agrees with Atlantic that the FDA classifications are not particularly relevant nor helpful to the coverage determination here (which has now been mooted by the Court's finding that the "Goods Insured" provision is ambiguous), this

argument goes to the *weight* of Liebschner's testimony and thus would not be precluded anyway.

Regarding the re-processing of medical devices, Atlantic's arguments that Liebschner's opinion is unsupported because he did not inspect the damaged goods also concern the weight of the opinion evidence. Atlantic will be free to cross-examine Liebschner during trial and challenge his findings on this basis. *See Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

And as to Atlantic's argument that Liebschner lacks expertise regarding the legality of re-processing medical devices in Puerto Rico and Florida, Atlantic may raise this challenge to Liebschner's particular expertise during cross-examination. *See Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) (citation omitted) ("[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility.").

As noted above in the discussion of Daniels' opinions, Liebschner will be testifying during a *bench* trial and "it is [therefore] presumed the judge will disregard inadmissible evidence and rely only on competent evidence." *Bujarski v. NCL (Bahamas) Ltd.*, No. 1:15-CV-21066-UU, 2016 WL 7469997, at *1 (S.D. Fla. Jan. 7, 2016); *see also Singh*, 2014 WL 4101544, at *1.

## IV. Conclusion

The Court **grants in part** and **denies in part** Atlantic's *Daubert* motion as it relates to Daniel and **denies** Atlantic's *Daubert* motion as it relates to Liebschner.

**DONE and ORDERED** in Chambers, at Miami, Florida, on January 13, 2020.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
All counsel of record